**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

MICHAEL THOMAS,                    *
                                   *
      Plaintiff,                   *
                                   *
                                   *  CIVIL ACTION NO. 23-00215-TFM-B
vs.                                *
                                   *
ALL IN CREDIT UNION,               *
                                   *
      Defendant.                   *

**REPORT AND RECOMMENDATION**

This action is before the Court on Defendant All In Credit Union's motion to dismiss Plaintiff Michael Thomas' amended complaint (Doc. 15). The motion has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S). (Doc. 4). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Defendant's motion (Doc. 15) be **GRANTED**, and that this action be **DISMISSED with prejudice.**

I.   **BACKGROUND**

On June 9, 2023, Plaintiff Michael Thomas ("Thomas"), who is proceeding *pro se*, filed a complaint against Defendant All In Credit Union ("All In") and paid the filing fee for a civil action. (Docs. 1, 2). In his original complaint, Thomas asserted the existence of federal question jurisdiction based on "Breach of Contract, Emergency Claim," and he described his claim as follows:

> Breach of Contract.  Submitted by endorsed bill with POA
> and written instructions to the CFO to transfer the
> principal's balance to the principal's account for set
> off and the CFO didn't do their performance.  Federal
> Reserve Act Section 29 states after third teir I'm
> entitled to $1,000,000 a day or 1% of total assets.  I
> want 1% of total assets plus interest and equity that's
> owed to the principal.  My credit card is closed and
> vehicle is set for reposession.[1]

(Doc. 1 at 3-4).

On June 26, 2023, All In filed a motion to dismiss Thomas'
original complaint for failure to state a claim pursuant to Federal
Rule of Civil Procedure 12(b)(6).  (Doc. 8).  On July 14, 2023,
Thomas filed an amended complaint on his own initiative.[2]  (Doc.
12).  Thomas' amended complaint superseded his original complaint
and became the operative pleading in this case.  All In's motion
to dismiss the original complaint was therefore denied as moot.
(Doc. 13).

In his operative amended complaint, Thomas asserts the
existence of federal question jurisdiction based on the "Bill of
Exchange Act, 12 USC 1431, Cestui Que Vie Act, 15 USC 1615, [and]
15 USC 1605."  (Doc. 12 at 3).  When prompted on the amended
complaint form to write a short and plain statement of his claim,

---

[1] Unless otherwise indicated by brackets, quoted language from
Thomas' *pro se* filings is reproduced herein without modification
or correction for typographical, grammar, or spelling errors.

[2] Thomas utilized a complaint form titled "Pro Se 1 (Rev. 12/16)
Complaint for a Civil Case" for both his original complaint and
his amended complaint.  (See Docs. 1, 12).

Thomas states only: "Breach of Contract." (Id. at 4). Thomas requests the following relief: "I want to endorse my remit slip every month for set off, I want my credit card back open and available for use, I want interest and equity that's owed to my principal, I want title to vehicle, refund of every payment made over one dollar." (Id.).

Thomas also attaches various documents to his amended complaint. (Id. at 6-23). These include an "ALABAMA POWER OF ATTORNEY FORM" dated April 10, 2023, which purports to list "MICHAEL THOMAS" as the "principal" and designate "Michael Thomas" as the principal's "agent." (Id. at 6-15).

The attached documents also include an "Affidavit"[3] signed by "Michael Thomas" as "Agent" on May 9, 2023, which states the following:

> On the 9th day of May 2023, I, Thomas, Michael/agent, on behalf of MICHAEL THOMAS/Principal, hereby accept all titles, rights, intertest and equity owed to MICHAEL THOMAS/Principal. I hereby instruct the CFO of ALL IN CREDIT UNION, Brant Malone, to transfer the principal's balance to the principal's account# . . . for set off. I instruct the CFO, Brant Malone, to communicate in writing within five (5) business days once instructions are completed. If instructions are not completed, I instruct the CFO, Brant Malone, to respond in writing within five (5) business days giving reason for non-performance of fiduciary duties. If no written communication is made within five (5) business days I, Thomas, Michael/agent on behalf of MICHAEL THOMAS/PRINCIPAL can assume the instructions have been completed.

---

[3] The "Affidavit" is not sworn to and subscribed before a notary. (See Doc. 12 at 16).

(Id. at 16).

There is also a letter dated May 16, 2023, which is titled "Opportunity to Cure" and states the following:

> I, Thomas, Michael, the agent on behalf of the principal MICHAEL THOMAS have sent a POA with instructions on May 9, 2023, for you, Brant Malone, the CFO of All In Credit Union to transfer the principal's balance to the principal's account# . . . for set off. Fiduciary duties were not performed and if you wish to not perform your fiduciary duties, I would like a reply within five business days giving reason for non-performance of fiduciary duties.

(Id. at 17).

Also attached to the amended complaint are a "Default Notice" and a "Letter of instructions," which are both dated May 24, 2023.

(Id. at 18, 20). The "Default Notice" states:

> I, Thomas, Michael, the agent on behalf of the principal MICHAEL THOMAS have sent a POA with instructions on May 6 and May 16, 2023, for you, Brant Malone, the CFO of All In Credit Union to transfer the principal's balance to the principal's account# . . . for set off. Fiduciary duties were not performed and if you wish to not perform your fiduciary duties, I would like a reply within five business days giving reason for non-performance of fiduciary duties.

(Id. at 18). The "Letter of instructions" states:

> This letter is for Brant Malone,

> I, Thomas, Michael, am the agent acting on behalf of the principal, MICHAEL THOMAS. On behalf of the principal, I'm here to accept all titles, rights, interests and equity that's owed to the principal. I instruct the CFO of All in Credit Union, Brant Malone, to transfer the principal's balance to the principal's account number . . . each month for set off. I instruct Brant Malone to perform your fiduciary duties within the next five (5)

business days.  If you wish to not perform your fiduciary
duties I instruct you to reply in writing giving your
reason.

(Id. at 20).

Thomas further attaches a document titled "Letter of
instructions [and] Opportunity to cure," which is dated June 1,
2023, and states the following:

This letter is for Brant Malone,

I, Thomas, Michael, am the agent acting on behalf of the
principal, MICHAEL THOMAS.  On behalf of the principal,
I'm here to accept all titles, rights, interests and
equity that's owed to the principal.  I instruct the CFO
of All in Credit Union, Brant Malone, to transfer the
principal's balance to the principal's account number .
. . each month for set off.  I instruct Brant Malone to
perform your fiduciary duties within the next five (5)
business days. If you wish to not perform you fiduciary
duties, I instruct you to reply in writing giving your
reason.

(Id. at 22).

Lastly, Thomas attaches account documents for what appear to
be a car loan and a credit card account with All In.  (Id. at 19,
21, 23).  These documents contain handwritten notations or
instructions "By: Thomas, Michael/agent For MICHAEL
THOMAS/Principal" or "By: Thomas, Michael/beneficiary For: MICHAEL
THOMAS/Principal," which include terms such as "Accept For
deposit," "Accepted For deposit," "Pay on demand," "Pay to the
bearer," and "Payable to bearer."  (Id. at 19, 21, 23).

On July 19, 2023, Thomas filed a response to All In's original
motion to dismiss which, although unnecessary, appears to shed

further light on his barely pled claims. (Doc. 14). In the response, Thomas states that he "sent an endorsed bill of exchange with a letter of instructions" to the Chief Financial Officer ("CFO") of All In and directed him "to transfer the principal's balance to the principal's account for setoff each month for the credit card as well as transfer the remaining principal's balance of the vehicle to the principal's account for setoff." (Id. at 1). Thomas complains that "[n]either endorsed bill of exchange was accepted as a form of payment causing the vehicle to be in default and up for repossession and the credit card to be inactive." (Id.). Thomas claims that he "also endorsed the bill using the Bill of Exchange Act and sent it to" All In's CFO and payment center, "and the payment was never applied to the account causing the account to go into default." (Id.). Thomas asserts that the "principal" is owed interest on the obligations from All In. (Id. at 2). Thomas suggests that the instrument he tendered to All in and negotiated to the United States Treasury is an "Obligation of The United States" and constitutes "legal tender." (Id.). Thomas concludes:

> The claim is breach of contract. . . . ALL IN CREDIT UNION CFO didn't perform their fiduciary duties that was owed to the principal when three letters of instruction were delivered with a POA and an endorsed bill of exchange which also wasn't accepted as a form of payment causing the account to go into default and incorrect reporting to the principal's credit report. The title to the vehicle should also be sent to the principal and the principal's balance should be setoff. The credit

6

> card should also be back active, and the endorsed bill
> of exchange should be accepted as a form of payment for
> both accounts. Doing so would satisfy the matter of the
> claim.

(Id. at 3).

On July 24, 2023, All In filed the instant motion to dismiss Thomas' amended complaint and a supporting memorandum of law. (Docs. 15, 16). Thomas timely filed a response in opposition to the motion to dismiss (Doc. 19), and All In filed a timely reply. (Doc. 20).[4] All In's motion to dismiss is therefore ripe for resolution.

## II. **STANDARDS OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

[4] Thomas later filed a surreply and requested summary judgment. (Doc. 21). He subsequently filed another motion for summary judgment. (Doc. 22). Because Thomas did not seek or obtain leave to file a surreply to All In's reply in support of its motion to dismiss, the Court will not consider the arguments made in Thomas' surreply. Moreover, to the extent Thomas' surreply contains an embedded motion for summary judgment, the motion (Doc. 21) is due to be denied because it is unsupported, premature, and does not comply with the Federal Rules of Civil Procedure or this Court's Local Rules. Thomas' subsequent motion for summary judgment (Doc. 22) is due to be denied for the same reasons.

(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  This necessarily requires that a plaintiff include factual allegations that plausibly support each essential element of his claim.  Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017).  That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011).  A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1271 (11th Cir. 2004) ("[A] pleading [cannot] survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."). A court reviewing a motion to dismiss must typically limit its consideration to the complaint and exhibits attached thereto. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).  However, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).  Even a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

### III. DISCUSSION

All In argues that Thomas' amended complaint should be dismissed with prejudice because it fails to allege any violation of the federal statutory provisions it cites, and because the complaint's limited factual allegations and exhibits reflect that Thomas' legal assertions are frivolous.  (Doc. 15 at 1). Specifically, All In asserts that Thomas' claims bear all the hallmarks of discredited "redemptionist" legal theories.  (Doc. 16 at 3-9).

For the reasons stated below, the undersigned finds that Thomas' amended complaint is devoid of facts plausibly suggesting any entitlement to relief.  The undersigned further concludes that Thomas' putative claims are frivolous because they are clearly

predicated on bizarre and baseless legal theories that have been uniformly rejected by federal courts.

## A. Authorities Cited as the Basis for Federal Question Jurisdiction.[5]

As noted *supra*, Thomas alleges that the "Bill of Exchange Act, 12 USC 1431, Cestui Que Vie Act, 15 USC 1615, [and] 15 USC 1605" form the basis for federal question jurisdiction in this case. (Doc. 12 at 3). However, Thomas fails to allege any facts that plausibly support an inference that any of these authorities are applicable to his complaint. As numerous courts have held when faced with similar complaints,[6] none of these authorities

---

[5] The Court notes as a preliminary matter that Thomas' amended complaint violates the Federal Rules' requirements that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and make allegations that are "simple, concise, and direct." See Fed. R. Civ. P. 8(a)(2) & 8(d)(1). The threadbare allegations in Thomas' amended complaint form are neither plain nor direct. Indeed, Thomas labels his claim as one for "Breach of Contract" without providing even a single factual allegation in support of such a claim, and he attaches various documents to the amended complaint without offering any explanation as to the relevance of those documents to his complaint. Neither this Court nor All In are required to sift through Thomas' exhibits and other filings in an effort to decipher his legal theories or the factual grounds for his claims. Nevertheless, because the frivolous nature of Thomas' allegations is reasonably clear based on a review of Thomas' pleadings, the Court will address Thomas' putative claims and the issues raised in All In's motion to dismiss without first requiring Thomas to replead in order to comply with Rule 8.

[6] Thomas "is not the first to send a 'bill of exchange' to a lender in hopes of settling a given debt." Wilson v. Veterans United Home Loans, 2023 U.S. Dist. LEXIS 207300, at *5, 2023 WL 7923862, at *3 (D.S.C. Oct. 25, 2023).

provide Thomas with a federal cause of action, particularly given his failure to allege any facts suggesting that the referenced authorities apply or were violated by All In.  See, e.g., White v. Lake Union Ga. Partners LLC, 2023 U.S. Dist. LEXIS 184024, at *6, 2023 WL 6036842, at *3 (N.D. Ga. July 14, 2023) (where plaintiff referenced "a string of other miscellaneous authorities, including 18 U.S.C. § 8, 12 U.S.C. § 1431, and 15 U.S.C. § 1605(a); Article XII of the Articles of Confederation; and two Acts of Parliament of the United Kingdom: 'Cestui que Vie Act 1666' and Bills of Exchange Act 1882[,]" finding that "[n]one of these provide him with a federal cause of action"); Wilson v. Aqua Fin., 2023 U.S. Dist. LEXIS 207303, at *9, 2023 WL 7924150, at *4 (D.S.C. Oct. 26, 2023) (same); Barnes v. Santander Consumer USA, Inc., 2023 U.S. Dist. LEXIS 47903, at *11-12, 14, 2023 WL 2585537, at *4-5 (N.D. Ohio Mar. 21, 2023) ("Plaintiff cites to several statutes that appear irrelevant to the facts alleged in this Complaint.  These include 15 U.S.C. § 1605 (definition of finance charges), . . . 12 U.S.C. § 1431 (defining the powers of banks), . . . and 18 U.S.C. § 8 (defining the United States obligations and securities).  She fails to allege any facts to suggest how these statutes might apply. . . . I conclude [that plaintiff's pleadings] fail to state a claim upon which relief may be granted."); Anderson v. Navy Fed. Credit Union, 2023 U.S. Dist. LEXIS 180090, at *4, 2023 WL 6481518, at *2 (W.D. Wash. Oct. 5, 2023) ("Anderson references generally

inapplicable statutes forming the basis for federal question jurisdiction. He references 15 U.S.C. § 1615, which addresses the use of 'Rule of 78's' in connection with mortgage refinancing, but he fails to allege any facts to support why this statute is applicable to his complaint. . . . He also references 12 U.S.C. § 1431, which defines the powers and duties of the Federal Home Loan Banks, without alleging facts relating to the statute or any applicable provisions."); Stephens v. Reg'l Hyundai, LLC, 2022 U.S. Dist. LEXIS 139391, at *11, 2022 WL 3139749, at *4 (N.D. Okla. Aug. 5, 2022) ("Plaintiff cites 12 U.S.C. § 1431, and she could be alleging that defendants willfully or negligently violated the Federal Home Loan Bank Act, 12 U.S.C. § 1421 et seq. However, she fails to allege that either defendant would qualify as a federal home loan bank as that term is defined in § 1422(1)(A).[7] . . . She also alleges no facts suggesting that her credit transaction would qualify as a home mortgage that would fall within the scope of the Federal Home Loan Bank Act. Plaintiff has not stated a claim under against either defendant under the Federal Home Loan Bank Act, and her claim described as 'Banks and Banking' is dismissed.").

## B.   Breach of Contract Claim.

Thomas describes his claim as one for "Breach of Contract." (Doc. 12 at 4). "The elements of a breach-of-contract claim under

---

[7] Likewise, Thomas fails to allege facts suggesting that 12 U.S.C. § 1431 applies to a credit union such as All In.

Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." Tangen v. Ideacom of the Gulf Coast, Inc., 590 F. App'x 836, 838 (11th Cir. 2014) (per curiam) (quoting Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009)).  Thomas does not plead facts plausibly suggesting that each of these elements are met.  Although it appears that Thomas has accounts with All In, he has not identified or provided any contract governing the relationship between the parties, nor has he identified any specific contractual provision that he believes has been breached.  Further, Thomas' suggestion that sending All In's CFO "an endorsed bill of exchange with a letter of instructions . . . to transfer the principal's balance to the principal's account for setoff each month for the credit card as well as transfer the remaining principal's balance of the vehicle to the principal's account for setoff" amounted to legitimate performance under a contract is highly implausible, as is the suggestion that the CFO's failure to comply with Thomas' demands amounted to nonperformance under a contract between the parties. See Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 758-60 (W.D. Va. 2007) (finding plaintiff's "claim that tendering the Bill of Exchange amounted to legitimate performance of the contract . . . highly implausible" when "the legal authorities [plaintiff] cites and the facts she alleges suggest that she did not tender

payment, but rather a worthless piece of paper"), aff'd, 282 F. App'x 260 (4th Cir. 2008) (per curiam). As set forth in more detail below, Thomas' claims, although obscurely pled and confusingly explained, are clearly predicated on discredited sovereign citizen and/or redemptionist legal theories that courts have roundly rejected as frivolous. Accordingly, the amended complaint fails to allege sufficient facts to state a claim for breach of contract that is plausible on its face.

  **C.** **Sovereign Citizen Arguments.**

  All In argues that dismissal with prejudice is warranted because Thomas' claims "bear all the hallmarks" of discredited sovereign citizen or "redemptionist" legal theories. (Doc. 16 at 4-10). The Court agrees and finds that although Thomas does not expressly identify himself as a sovereign citizen or expressly reference the redemptionist, vapor money, and unlawful money legal theories discussed in All In's supporting memorandum, it is evident from Thomas' allegations, exhibits, and explanations that his claims are rooted in sovereign citizen ideology.

  As the Third Circuit has explained:

> [T]he "Redemptionist" theory . . . propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 1933, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free.

Monroe v. Beard, 536 F.3d 198, 203 n.4 (3d Cir. 2008).

In addition,

The Redemptionists claim that by a birth certificate, the government created "strawmen" out of its citizens. A person's name spelled in "English," that is with initial capital letters and small letters, represents the "real person," that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the "strawman" is referenced, and the flesh and blood person is not involved.

McLaughlin v. CitiMortgage, Inc., 726 F. Supp. 2d 201, 210 (D.

Conn. 2010) (quotation omitted); see also Bryant, 524 F. Supp. 2d

at 758 n.8 ("[T]he name of the fictitious entity is the real

person's name in all-capital letters, which apparently explains

why names are commonly written in all-capital letters on birth

certificates, driver's licenses, and other government

documents.").

Another tenet of the Redemptionist theory is that when the United States Government "pledged the strawman of its citizens as collateral for the country's national debt," it created an "exemption account" for each citizen, identified by each person's Social Security number. When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts. Moreover, each citizen's exemption account is virtually bottomless, meaning that those who understand this theory—and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as "redemption," never have to actually pay for anything.

McLaughlin, 726 F. Supp. 2d at 210 (internal citations omitted).

"The 'vapor money' and 'unlawful money' theories appear to be tenets or corollaries to the above-described 'Redemptionist' theory." Id. at 212.

> The genesis of the vapor money theory is that the decision by the United States in 1933 to discard the gold standard resulted in the federal government's bankruptcy, after which lenders have been creating unenforceable debts because they are lending credit rather than legal tender. Accordingly, under the vapor money theory, a loan imposes no repayment obligation if the indebtedness was funded with credit as opposed to hard currency. The essence of the vapor money theory is that the promissory notes (and similar instruments) are the equivalent of money that citizens literally create with their signatures.

Brown v. Selene Fin. LP, 2023 U.S. Dist. LEXIS 63323, at *12, 2023 WL 3335060, at *4 (N.D. Ga. Apr. 10, 2023) (internal citations and quotation marks omitted), report and recommendation adopted, 2023 U.S. Dist. LEXIS 136791, 2023 WL 4996552 (N.D. Ga. June 1, 2023); see also Tonea v. Bank of Am., N.A., 6 F. Supp. 3d 1331, 1344 (N.D. Ga. 2014) (explaining that a claim based on the "vapor money" theory typically relies upon "the convoluted and nonsensical argument that a plaintiff does not owe the money advanced by the lender on his loan because the indebtedness was not funded by the lender with actual money").

"Under the 'unlawful money' theory, which is slightly different, the issuance of 'credit' is said to violate Article I, Section 10 of the United States Constitution, which purportedly 'requires a state to accept and recognize only gold and silver

coin as legal tender.'" <u>Buckley v. Bayrock Mortg. Corp.</u>, 2010 WL 476673, at *8 (N.D. Ga. Feb. 5, 2010) (citation omitted). "As allegedly established by the 'unlawful money' theory, issuing credit violates the Constitution's prohibition against 'mak[ing] any Thing but gold and silver Coin a Tender in Payment of Debts.'" <u>McLaughlin</u>, 726 F. Supp. 2d at 212. "This 'fact' . . . means that the bank-lender gave essentially no consideration, and risked nothing, in making the purported loan, rendering the transaction void (or at least voidable) under general principles of contract law." <u>Id.</u> at 213. "The second alleged benefit of this theory is that when borrowing from a bank, the citizen-borrower actually *comes out ahead* in the transaction—after all, she is the only one who gave anything of value, and it would constitute unjust enrichment for the bank to 'keep' the value of what the citizen-borrower gave it." <u>Id.</u>

Thomas' amended complaint and myriad other filings (through which he is trying to extinguish his debts using convoluted and nonsensical legal theories) bear several indicia of being rooted in sovereign citizen ideology and the discredited theories outlined above. For example, Thomas lists the "Cestui Que Vie Act" as a basis for federal question jurisdiction and attaches a power of attorney form in which Thomas purported to appoint himself as his own agent. <u>See</u> <u>Anderson</u>, 2023 U.S. Dist. LEXIS 180090, at *7, 2023 WL 6481518, at *3 ("Although Anderson does not expressly

state he is a 'sovereign citizen,' his allegations, explanations, and exhibits are all demonstrative of his claims being rooted in sovereign citizen ideology.  Specifically, Anderson cites the Cestui Que Vie Act of 1666 as basis for federal question jurisdiction and includes a document entitled 'DURABLE POWER OF ATTORNEY[,]' both of which are tied to theories associated with the sovereign citizen movement.") (internal citation omitted); Wood v. United States, 161 Fed. Cl. 30, 34 (Fed. Cl. 2022) ("Sovereign citizens also sometimes reference the Cestui Que Vie Act of 1666, or a 'cestui que vie' trust, as support for their arguments in court."); Lawson v. United States Dep't of Just., 527 F. Supp. 3d 894, 898 (N.D. Tex. 2021) (concluding that plaintiff was "an adherent to a 'sovereign citizen' ideology" when he "gave an alleged power of attorney from 'PAUL EUGENE LAWSON®' to 'Paul-Eugene:Lawson®, . . . the flesh and blood man, the living soul.'").[8]

Further, Thomas' exhibits repeatedly purport to distinguish "Michael Thomas" (agent) and "MICHAEL THOMAS" (principal) as separate entities, "a distinction common to sovereign citizen claims." Lebron v. BMW Fin. Servs., 2021 U.S. Dist. LEXIS 262002, at *7, 2021 WL 9594003, at *3 (M.D. Fla. Dec. 13, 2021); see United States v. Beeman, 2011 U.S. Dist. LEXIS 70892, at *30, 2011 WL

---

[8] Thomas states: "By submitting my Power of Attorney and doing my performance I've proven I'm alive and come forward to claim back my Estate and I'm owed full profits with interest."  (Doc. 14 at 2).

2601959, at *11 (W.D. Pa. June 30, 2011) (noting that the distinction between "EBERT GORDON BEEMAN" and "Ebert Gordon Beeman" on a UCC filing "appears to be purposeful and, together with the reference to 'HJR 192,' appears to invoke a contrived and convoluted tax-defier theory known as 'redemption'"); Bryant, 524 F. Supp. 2d at 758 n.8.

Thomas also relies on "HJR-192 (1933)" in arguing that the "bills of exchange" he submitted to All In constituted "legal tender" and satisfied his loan and credit card obligations. (Doc. 14 at 2). "As in this suit, . . . a sovereign citizen may reference the 'House Joint Resolution 192' of 1933 as a legal basis for his or her redemption claim . . . ." Wood, 161 Fed. Cl. at 34; see also Estes v. Toyota Fin. Serv., 2015 WL 222137, at *5 n.1 (E.D.N.Y. Jan. 13, 2015) ("Plaintiff's claims appear to be an iteration of the 'vapor money' theory, which claims that because the United States went off the gold standard in 1933 with the passage of HJR-192, 'the United States has been bankrupt and lenders have been creating unenforceable debts because they are lending credit rather than legal tender.'") (citation omitted); Coppedge v. PNC Bank, 2018 U.S. Dist. LEXIS 237213, at *1-2 n.1, 2018 WL 10811876, at *1 n.1 (E.D. Pa. Nov. 21, 2018) ("HJR 192 and Public Law 73-10 are the legal underpinnings of the Redemptionist theory. . . . Nevertheless, as numerous other courts have held, a claim for the discharge of debt under the Redemptionist theory

pursuant to HJR 192, Public Law 73-10, and the UCC fails as a matter of law and should be dismissed with prejudice.").

Thus, as far as the undersigned can determine, Thomas' amended complaint raises frivolous sovereign citizen claims that appear to be based on a theory that Thomas somehow has the ability to essentially convert a payment demand into legal tender and magically extinguish his debts.  "Contentions based on sovereign citizen arguments are frivolous and courts ordinarily reject them without extended argument."  Anderson, 2023 U.S. Dist. LEXIS 180090, at *7, 2023 WL 6481518, at *3.  The undersigned will do likewise here.  Thomas' underlying legal theory is utterly frivolous, patently ludicrous, and a waste of this Court's time and resources.  Therefore, dismissal of his putative claims is warranted.

**D. Dismissal With Prejudice.**

All In asserts that because Thomas' amended complaint is frivolous, it should be dismissed with prejudice.  (Doc. 16 at 10).  Although leave to amend a deficient complaint should be freely given when justice so requires, leave may be denied if amendment would be futile.  Fed. R. Civ. P. 15(a)(2); Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).  The undersigned concludes that the fundamental defects in Thomas' amended complaint are substantive rather than formal, such that any further amendments would be futile.  More specifically, as

discussed above (and as his amended complaint and other filings reveal), Thomas' claims are apparently founded on a legal theory that has been uniformly rejected as not just lacking in merit, but as a frivolous waste of court resources. Given the frivolous nature of Thomas' underlying legal theory in this case, any amendments to the amended complaint's putative causes of action would be futile and non-curative. Therefore, this action should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### IV.  <u>CONCLUSION</u>

For the reasons set forth above, the undersigned recommends that Defendant All In Credit Union's motion to dismiss Plaintiff Michael Thomas' amended complaint (Doc. 15) be **GRANTED**, and that this action be **DISMISSED with prejudice.**

### <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the

provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **7th** day of **December, 2023.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
